SIGNED.

Dated: February 6, 2012

**James M. Marlar, Chief Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) Chapter 7 |
| DEAN A. RODY and SOROYA H. MOHAMMADPOUR, | ) No. 4:11-bk-17790-JMM |
| Debtors. | ) **MEMORANDUM DECISION** |

Dean Rody and Soroya Mohammadpour ("Debtors") claimed various items of personal property exempt under 11 U.S.C. § 522(d). The chapter 7 Trustee objected that the Debtors were required to claim the Arizona exemptions, which, he asserted, applied beyond state borders (ECF No. 30). It was undisputed that Debtors, who had moved to Massachusetts prepetition, met the domiciliary requirements of the Bankruptcy Code for application of the Arizona exemptions. Debtors responded, however, that Arizona's "opt-out" statute for use of the state exemptions was restricted to residents of Arizona. Thus, because they were not Arizona residents on the petition date, they maintained they were entitled to use the federal exemptions pursuant to the default rule of 11 U.S.C. § 522(b)(3). The contested matter was heard and taken under advisement. The Court now renders its decision overruling the Trustee's objection.

## I. Jurisdiction

The Court has jurisdiction over this core matter under 28 U.S.C. § 1334; see also 28 U.S.C. § 157(b)(2)(B). Venue is proper in this district under 28 U.S.C. § 1408.

## I. Facts and Procedure

Debtors resided in Arizona from 2000 to May 16, 2011. On May 17, 2011, they moved permanently to Massachusetts and were residing there on the petition date. On June 21, 2011, Debtors filed a joint chapter 7 petition in Arizona.

On Amended Schedule C, Debtors claimed various items of personal property exempt pursuant to 11 U.S.C. § 522(d). Debtors used the federal exemptions even though they met the domiciliary requirements for the Arizona exemptions in accordance § 522(b)(3), which provides:

> (3) Property listed in this paragraph is–
>
> (A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;
>
> . . . .
>
> If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d).

Since Debtors had not been in Massachusetts for 730 days prior to filing bankruptcy, but had lived in Arizona for the 180 days immediately preceding the 730-day period (or a longer portion of such 180-day period than any other place), they met the domiciliary requirements for the Arizona exemption statutes.

As permitted by 11 U.S.C. § 522, Arizona has elected to "opt out" of the federal exemption scheme, such that Arizona debtors can only use the state exemptions. The opt-out statute, provides, in pertinent part:

> [I]n accordance with 11 U.S.C. § 522(b), **residents** of this state are not entitled to the federal exemptions provided in 11 U.S.C. 522(d). Nothing in this section affects the **exemptions provided to residents of this state** by the constitution or statutes of this state.

2

Case 4:11-bk-17790-JMM    Doc 42   Filed 02/06/12   Entered 02/06/12 14:20:47   Desc
Main Document - Trustee Objection to Exempt Property (batch)    Page 2 of 11

A.R.S. § 33-1133(B) (emphasis supplied.)

Debtors believed they were ineligible for the Arizona exemptions because they were residents of Massachusetts on the petition date. Given the "plain language" of A.R.S. § 33 1133(B), Debtors followed the default rule in the "hanging paragraph" of § 522(b)(3), cited above, which states: "[I]f the effect of the domiciliary requirement . . . is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d)" of § 522. 11 U.S.C. § 522(b)(3).

The Trustee filed a timely objection to the claimed exemptions (ECF No. 30) solely on the grounds that Debtors were required to claim the Arizona exemptions. Debtors filed a response in opposition (ECF No. 32), maintaining that, as nonresidents, they were not eligible to use the Arizona exemptions.

The Trustee replied that Debtors' "strained reading" of A.R.S. § 33-1133(B) "would defeat the federal bankruptcy exemption scheme that preserves to individual states the right to opt out of the federal exemptions and require the use of the state's exemption laws." Trustee's Reply at 1:20-23 (ECF No. 33). The Trustee contended that the Arizona exemptions were available to the nonresident Debtors because (1) A.R.S. § 33-1133(B) did not explicitly prohibit their use by nonresidents, and (2) opt-out state statutes have extraterritorial application, citing In re Arrol, 170 F.3d 934 (9th Cir. 1999) (interpreting California law).

Debtors' sur-reply (ECF No. 34) was also filed. A hearing took place at which the Court considered the arguments and pleadings, and took the matter under advisement.

## **II. Issues**

1. Whether Arizona's exemption scheme is only applicable to resident debtors.
2. Whether a determination as to the extraterritorial effect of Arizona's personal property exemptions is necessary to decide this matter.

3

3. Whether the Debtors correctly concluded that they could use the federal exemptions because there were no state exemptions available to them.

### **III. Discussion**

The commencement of a bankruptcy case creates an estate comprised of all legal and equitable interests in property (including potentially exempt property) of the debtor. 11 U.S.C. § 541. A debtor is entitled to exempt certain assets from the bankruptcy estate. 11 U.S.C. § 522. In general, exemption laws are to be construed liberally in favor of debtors. See Arrol, 170 F.3d at 937.

Because we are a mobile society, Congress enacted a statute which would determine which exemption law would apply to debtors whose domicile has changed near the time of the filing of the petition. The main purpose of this legislation was to prevent opportunistic bankruptcy filings by debtors simply to take advantage of lenient state exemption laws. W.H. Brown, L. Ahern & N. Frass MacLean, Bankr. Exempt. Manual §4.6 (2011 Thomas Reuters/Westlaw).

This case, however, does not involve forum shopping by Debtors or the so-called "mansion loophole," "by which wealthy individuals could shield millions of dollars from creditors by filing bankruptcy after converting nonexempt assets into expensive and exempt homesteads in one of the handful of states that have unlimited homestead exemptions . . . ." In re Greene, 583 F.3d 614, 619 (9th Cir. 2009) (citation omitted). Debtors are simply among the growing number of peripatetic debtors who moved to another state and then found themselves subject to the expanded domiciliary rules. See generally, L. Bartell, "The Peripatetic Debtor: Choice of Law and Choice of Exemptions," 22 Emory Bankr. Dev. J. 401 (Spring 2006).

Since 2005, § 522(b)(3)(A), as amended, has provided a look-back period of 730 days for use of a state's exemptions --a debtor must have been domiciled for that period of time in the state immediately preceding the bankruptcy filing, or else the exemptions of the state where the debtor was domiciled for 180 days or the greater part of 180 days prior to the 730 days would apply. The amendment was a departure from the bankruptcy venue requirements, and courts now must

4

construe exemption laws of other states. See In re Jevne, 387 B.R. 301, 303 (Bankr. S.D. Fla. 2008). Congress presumably contemplated the effect of state laws which might restrict their applicability to residents or to in-state property, potentially leaving debtors without any exemptions. That is why it included the default language or hanging paragraph in § 522(b)(3) as a fail-safe mechanism. As cited above, this provision states in relevant part: "[I]f the effect of the domiciliary requirement . . . is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d)" of § 522. 11 U.S.C. § 522(b)(3).[1]

Arizona has opted out of the federal bankruptcy exemption scheme only with respect to Arizona residents. The opt-out statute, provides, in pertinent part:

> [I]n accordance with 11 U.S.C. § 522(b), *residents* of this state are not entitled to the federal exemptions provided in 11 U.S.C. 522(d). Nothing in this section affects the *exemptions provided to residents* of this state by the constitution or statutes of this state.

A.R.S. § 33-1133(B) (emphasis supplied.)

"A.R.S. § 33–1133(B) clearly states that Arizona debtors are only entitled to the exemptions set forth in the Constitution or Statutes of Arizona." In re Hoffpauir, 125 B.R. 269, 271 (Bankr. D. Ariz. 1990). Thus, Arizona residents may not use the federal bankruptcy exemptions. In addition, the statute states that the exemptions are "provided to residents." Courts must apply the plain meaning of the statute and may not read into a statute an exemption that is not there. Id. The Trustee's suggestion that this statute does not expressly prohibit a nonresident from utilizing the Arizona exemptions is contrary to the plain meaning of the opt-out for residents.

---

[1] There is little legislative history regarding this paragraph except that it was carried forward from an earlier House bill whose Conference Report explained that "if the effect of [the new 730 day domiciliary rule] is to render the debtor ineligible for any exemption, the debtor may elect to exempt property of the kind described in the federal exemption notwithstanding state opt out." H. Rep. No. 107-617, Conference Report to Accompany H.R. 333, Bankruptcy Abuse Prevention and Consumer Protection Act of 2002, at 58-59 (July 25, 2002). The language was apparently included after a legislative affairs liaison at the Department of Justice sent a letter to a House member pointing out that the proposed domiciliary requirement might not be effective depending on how state exemption laws are applied. See In re Fernandez, 445 B.R. 790, 816 & n.42 (Bankr. W.D. Tex. 2011), rev'd on other grounds, In re Fernandez, 2011 WL 3423373 (W.D. Tex. Aug. 5, 2011).

According to a leading treatise, Debtors' approach was the correct one. A debtor's election to exempt property under § 522(d)

> may arise if the exemption law of the debtor's domicile *requires that the debtor reside within the state* to claim exemption rights *or* if the state law does not permit an exemption to be taken on property located outside the state.

4 Collier on Bankruptcy ¶522.06, p. 522-39 (16th ed. 2011) (emphasis added).

Confusingly, the courts have focused on one or the other--either residency restrictions or extraterritorial effect (particularly for homesteads)–and have reached divergent results. Nevertheless, Debtors' case law presents a majority view which this Court finds compelling.

Debtors cite numerous cases from states in other circuits with similar facts and statutes containing a residency restriction. This line of cases holds that debtors may claim the federal exemptions because they are not residents of the opt-out states whose opt-out statutes prohibit only their residents from using the federal exemptions. See In re Camp, 631 F.3d 757, 760 (5th Cir. 2011) (listing cases).[2]

In Camp, the Fifth Circuit Court of Appeals held that the Florida opt-out statute, by its own terms, neither applied to nonresident debtors nor barred nonresident debtors from claiming the federal exemptions if they remained eligible to use them. Id. The court therefore avoided a discussion of thornier, "corollary" questions dealing with the effect of the savings clause of § 522(b)(3) when a state restricts the extraterritorial application of its exemption scheme, and preemption . Id. at 761 n.3.

This line of cases was adopted as the "state-specific" view by the court in In re Fernandez, ___ B.R. ___, 2011 WL 3423373 (W.D. Tex. Aug. 5, 2011), which is "that a state's exemption laws may be used by out-of-state debtors for out-of-state property to the extent that each

---

[2] These and other cases include: In re Cole, 2011 WL 3207369 at *2 (Bankr. S.D. Ind. July 26, 2011) ; In re Beckwith, 448 B.R. 757 (Bankr. S.D. Ohio 2011); In re Chandler, 362 B.R. 723 (Bankr. N.D. W. Va. 2007); In re Battle, 366 B.R. 635 (Bankr. W.D. Tex. 2006); In re Underwood, 342 B.R. 358 (Bankr. N.D. Fla. 2006); In re Jewell, 347 B.R. 120 (Bankr. W.D. N.Y. 2006); In re Volk, 26 B.R. 457 (Bankr. D. S.D. 1983); In re Walley, 9 B.R. 55 (Bankr. S.D. Ala. 1981); cf. In re Nickerson, 375 B.R. 869 (Bankr. W.D. Mo. 2007) (Kansas personal property exemption statute restricted to residents).

state's exemption law permits." Id. at *11. The District Court examined the applicable Nevada homestead statute and held that it would reach property in Texas. Id. at *27.

The Trustee relies on Fernandez and has framed his objection in terms of the extraterritorial effect of Arizona's personal property exemptions upon those assets in Massachusetts. Fernandez's facts are distinguishable from ours, however. There, the debtor was seeking to use the *Nevada homestead exemption* for his current residence in Texas. Thus, the District Court expressly did not address the effect of Nevada's opt-out statute and any residency requirement. Id. at *22 n.5. Instead, the *corollary* question addressed by the District Court was whether Nevada's homestead exemption law, consisting of its Constitution, its homestead exemption statute and relevant case law, would permit a nonresident debtor to claim an exemption in a home that was located in a state other than Nevada. The District Court concluded it would. Id. at *28.

Also, central to the Trustee's argument is the seminal Ninth Circuit case of In re Arrol, 170 F.3d 934, 937 (9th Cir. 1999). In Arrol, the Ninth Circuit held that California law, although silent on the subject, would allow the extraterritorial application of its homestead exemption so that a debtor, who was currently residing in Michigan but who met the § 522(b)(3)(A) domiciliary requirements for applying California's exemptions, could protect his Michigan residence.

Arrol was decided pre-BAPCPA, when there was no default provision allowing use of the federal exemptions if a debtor did not qualify for the applicable state's exemptions. The Ninth Circuit Court of Appeals was concerned that the debtor would be left with no way to preserve his need for basic housing. Id. at 936. Nor did Arrol's state-specific interpretation address the issue of any residency requirement in the California opt-out statute.

On our facts, however, the *first hurdle* for the Court is to determine whether Arizona's opt-out statute applies to nonresident debtors. It plainly does not. Nor are Debtors attempting to use Arizona's personal property exemptions; in contrast, the debtors in Fernandez and Arrol claimed exemptions under state law. There is no controversy before the Court with regards to the extraterritoriality of Arizona's personal property exemptions, as if Debtors had claimed exemptions under state law. Thus, this Court shall not reach the corollary issue of whether the Arizona personal property exemptions have extraterritorial effect.

7

That being said, the Court must discuss certain case law which holds that, even if the domiciliary state's opt-out statute is limited to residents, before the debtor can utilize the federal exemptions, which are only available in case the debtor is ineligible for "any exemption," the state exemption statute must not be extraterritorial. 11 U.S.C. § 522(b)(3)(A); see In re Beckwith, 448 B.R. 757 (Bankr. S.D. Ohio 2011); In re Cole, 2011 WL 3207369 (Bankr. S.D. Ind. July 26, 2011).

Beckwith applied Florida opt-out law, which mirrors the Arizona opt-out statute. Florida Statutes § 222.20 provided:

> In accordance with the provision of s. 522(b) of the Bankruptcy Code of 1978 (11 U.S.C. 522(b)), residents of this state shall not be entitled to the federal exemptions provided in s. 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. s. 522(d)). Nothing herein shall affect the exemptions given to residents of this state by the State Constitution and the Florida Statutes.

Fla. Stat. § 222.20 (2010). The court did not stop there, however. "The question then becomes, the Beckwith court stated, "are Florida's exemptions available only to its residents or are the exemptions given extraterritorial application?" 448 B.R. at 762. After looking at the exemption statutes and finding that they did not contain any language limiting them to residents of Florida, the court nonetheless determined that the majority of prior case law, including courts construing Florida law, had "upheld state residency requirements as a condition to invoking the state's exemptions." Id. at 762.

In Cole, the bankruptcy court cited Beckwith, but merely examined the Georgia opt-out statute to determine that it was limited to those persons who are domiciled in Georgia on the petition date. It held that an opt-out statute limiting use of the exemption to individuals domiciled in Georgia effectively limits the use of the exemption to property within that state and has no extraterritorial effect. 2011 WL 3207369 at *2. Therefore, both Beckwith and Cole allowed the debtors to claim the federal exemptions under the default provision.

As in Cole, Arizona's opt-out statute is also an "exemption" statute that limits the availability of the state's exemption scheme to its residents. See also Camp, 631 F.3d at 761; Battle, 366 B.R. at 636-37. Moreover, neither party to this dispute has presented any Arizona authority for

8

Case 4:11-bk-17790-JMM    Doc 42    Filed 02/06/12    Entered 02/06/12 14:20:47    Desc
Main Document - Trustee Objection to Exempt Property (batch)    Page 8 of 11

the extraterritorial effect of its personal property exemptions. Even assuming that A.R.S. § 33-1125 has extraterritorial effect, the exemption is limited to Arizona residents.

As an illustration, in In re Jarski, 301 B.R. 342 (Bankr. D. Ariz. 2003), a debtor resided in a home in Arizona, filed bankruptcy in Arizona, and also owned a residence in California. This being a lien avoidance case, the court did not adjudicate which state's exemption laws actually applied, but it nonetheless opined that Arizona's homestead exemption statute "expressly contemplates that a debtor might have more than one residence that could qualify for the exemption because it creates a procedure for the debtor to choose which to claim as exempt." Id. at 346; A.R.S. § 33-1102(A). The Jarski court also stated that § 522(b)(3)(A) (formerly § 522(b)(2)(A)) "determines whose law governs the exemptions, *but not whether the property claimed exempt must exist in that same state*." Id. (emphasis added).

While the logic of Jarski and Arrol could require the Court to review the extraterritorial effect of Arizona's personal property exemption in the event that Arizona law was "applicable," 11 U.S.C. § 522(b)(3)(A), here, Arizona law is not applicable. Arizona's opt-out statute limits the state exemptions to residents of Arizona.

Therefore, Debtors were free to utilize the § 522(d) exemptions pursuant to the default clause. In addition, the Court concludes that an examination of the extraterritorial effect of the specific personal property exemption statutes is unnecessary for resolving this matter.

Finally, the Trustee's objection also raises aspects of a minority view in the case law, which holds that federal law preempts any state limitations that would conflict with the federal choice of law in § 522(b)(3)(A). See In re Garrett, 435 B.R. 434 (Bankr. S.D. Tex. 2010) (holding that Bankruptcy Code provision that required debtors to look to North Carolina exemption law preempted provision of North Carolina law providing that its exemption laws would not have extraterritorial effect). Furthermore, the Ninth Circuit, in Arrol, asserted the supremacy of the federal choice of law statute, but ultimately ruled according to its interpretation of California law. 170 F.3d at 936.

This Court is persuaded by the many legal analyses and opinions which have concluded that the preemption doctrine does not neatly fit this area where Congress has explicitly allowed the states to opt out of the federal exemptions–the opposite of preemption.[3]

In addition, it is well established law in the Ninth Circuit that where state exemption laws condition or limit the exempt status of property in ways that are more or less generous than the federal exemptions, such conditions or limitations must be respected. In re Konnoff, 356 B.R. 201, 205-06 (9th Cir. BAP 2006) (citing In re Golden, 789 F.2d 698, 700 (9th Cir. 1986) and Owen, 500 U.S. at 308). Ultimately, attempting to prevent potentially unfair or absurd results in the application of § 522(b)(3)(A) by ignoring unambiguous state law is not the role of the bankruptcy courts.

## **IV. Conclusion**

Arizona's opt-out exemption statute renders the nonresident Debtors ineligible for the state exemptions but does not prohibit them from utilizing the federal exemptions pursuant to § 522(b)(3) and (d). Therefore, Debtors' federal exemption claims are valid and the Trustee's objection is overruled. A separate order will be entered.

DATED AND SIGNED ABOVE.

---

[3] As Judge Leif Clark points out in Fernandez, 445 B.R. at 807-15, if Congress had intended to preempt state restrictions, then § 522(b)(3)(A) would have stated that it applies to any property that "would be exempt"–i.e., an artificial application-- instead of any property that "is exempt." There is precedent for disregarding an "element of reality" in order to avoid a judicial lien pursuant to § 522(f). See Owen v. Owen, 500 U.S. 305, 312-13, 111 S.C. 1833, 114 L.Ed.2d 350 (1991) . See also T. Tarvin, "Bankruptcy, Relocation, and the Debtor's Dilemma: Preserving Your Homestead Exemption Versus Accepting the New Job Out of State," 43 Loy. U. Chi. L. J. 141, 203 (Fall 2011) (calling for a "statutory change" to correct for the "arbitrary imposition of a look-back period" while accomplishing the goal of preventing "relocation gaming").

1 | To be NOTICED by the BNC ("Bankruptcy Noticing Center") to:
2 | Attorney for Debtors
3 | Chapter 7 Trustee
  | Office of the U.S. Trustee
11

Case 4:11-bk-17790-JMM   Doc 42   Filed 02/06/12   Entered 02/06/12 14:20:47   Desc
Main Document - Trustee Objection to Exempt Property (batch)   Page 11 of 11